# UNITED STATES BANKRUPTCY COURT
## Northern District of Illinois (Chicago)

In re: Jaime Espinal  
Case No: 13-36081  
Chapter: 13

Last four digits of any number you use to identify the debtor's account: 2238  
Court Claim No. (if known):

## STATEMENT IN RESPONSE TO NOTICE OF FINAL CURE PAYMENT

As contemplated by Fed. R. Bankr. Proc. 3002.1

**CitiFinancial Services, Inc.**

("Creditor") hereby responds to that certain Notice of Final Cure Payment ("Cure Notice") dated 11/20/2015 and filed as Docket No. 37

### Prepetition Default Payments
*Applicable option is checked*

[✓] Agrees that Debtor(s) has paid in full the amount required to cure the default on Creditor's claim.

[ ] Disagrees that Debtor(s) has paid in full the amount required to cure the default on Creditor's claim and states that the total amount due to cure Prepetition arrears is:  
Total Amount Due:

Attached as Schedule of Amounts Outstanding on Prepetition Claim is an itemized account of the Prepetition amounts that remain unpaid as of the date of this statement.

### Postpetition Default Payments
*Applicable option is checked*

[✓] Agrees that Debtor(s) is current with respect to all payments consistent with § 1322(b)(5) of the Bankruptcy Code.

[ ] Disagrees that the Debtor(s) is current with respect to all payments consistent with § 1322(b)(5), and states that the total amount due to cure Postpetition arrears is:  
Total Amount Due:

Attached as Schedule of Amounts Outstanding Postpetition Claim is an itemized account of the Postpetition amounts that remain unpaid as of the date of the Cure Notice. The amounts outstanding identified on the Schedule do not reflect amounts that became or may become due after the date of the Cure Notice, including any fees that may have been incurred in the preparation, filing, or prosecution of this statement.

The amounts due identified on this statement may not, due to timing, reflect all payments sent to Creditor as of the date of the Cure Notice. In addition, the amounts due may include payments reflected on the NDC but which have not yet been received and/or processed by Creditor.

Date: 12/07/2015

Signature: /s/Jennifer Puckett  
Title: Bankruptcy Specialist III  
Company: CitiFinancial, Inc.  
Address: PO BOX 6043  
Sioux Falls, SD 57117  
Phone: 888-701-6280  
Email: CitiBKAudit@citi.com

**Case No:** 13-36081

# UNITED STATES BANKRUPTCY COURT

**Schedule of Amounts Outstanding Prepetition Claim**

| Payment Description | Payment Date | Payment Amount |
|---|---|---|
| | | |

**Case No:** 13-36081

# UNITED STATES BANKRUPTCY COURT

| Schedule of Amounts Outstanding Postpetition Claim* | | |
|---|---|---|
| Payment Description | Payment Date | Payment Amount |
| | | |

***Comments***

Case No:   13-36081

# UNITED STATES BANKRUPTCY COURT

## Certificate of Service

I hereby certify that a copy of the foregoing Statement in Response to Notice of Final Cure Payment was served on the parties listed below by postage prepaid U.S. Mail, First Class or served electronically through the Court's ECF System at the e-mail address registered with the Court on this Date:

Date:   12/07/2015

Chapter 13 Trustee:  Glenn B Stearns
Trustee Address:     801 Warrenville Road
                     Suite 650
                     Lisle, IL 60532

Debtor's Counsel Name:     Christopher R Lopez
Debtor's Counsel Address:  Geraci Law L.L.C.
                           55 E. Monroe # 3400
                           Chicago, IL 60603

Debtor 1 Name:            Jaime Espinal
Debtor 2 Name:
Debtor's Mailing Address: 2S779 Winchester Circle 3
                          Warrenville, IL 60555

Signature: /s/Jennifer Puckett
Title: Bankruptcy Specialist III
Company: CitiFinancial, Inc.
Address: PO BOX 6043
Sioux Falls, SD 57117
Phone: 888-701-6280
Email: CitiBKAudit@citi.com

| Borrower(s) (Name and mailing address) | Lender (Name, address, City and State) | Account No. |
|---|---|---|
| JAIME ESPINAL<br>120 W BROWN ST<br>WEST CHICAGO IL 60185 | CITIFINANCIAL SERVICES, INC.<br>164 DANADA SQUARE WEST<br>WHAEATON IL 60187 | 200089 |
| | | Date of Loan<br>12/18/2006 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 12.25 % | $ 60,009.36 | $ 35,623.44 | $ 95,632.80 |

Payment Schedule:

| Number of Payments | Amount of Payments* | When Payments Are Due |
|---|---|---|
| 240 | $ 398.47 | MONTHLY BEGINNING  01/22/2007 |
| | $ | |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** If checked, Borrower is giving a security interest in:
[ ] Motor Vehicle  [ ] Mobile Home
[X] Real Property  [ ] Other:

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty, and will not be entitled to a refund of part of the finance charge.

**Late Charge:** If a payment is late, Borrower will be charged $ 0.00 or 0.0 % of the amount in default, whichever is greater.

\* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 398.47 | $ 36,692.15 | $ 1,068.71 | 12/22/2006 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less.

If the collateral securing the credit is a motor vehicle (including a recreational vehicle, boat, or movable mobile home), Borrower must provide collision and comprehensive casualty insurance in an amount sufficient to satisfy the unpaid balance of the loan or equal to the value of the collateral, whichever is less. All such policies and renewals thereof must name Lender as loss payee and must be maintained by Borrower, until the credit is repaid in full. Borrower may obtain a new insurance policy or provide an existing policy from any insurer that is acceptable to Lender. If Borrower obtains the Automobile Physical Damage Insurance at Lender's office, Borrower acknowledges that such insurance (1) may cost more than insurance that is available from another insurer, (2) will only protect Lender's interest in the collateral and does not protect Borrower's interest, and (3) does not protect Borrower from claims by other persons.

Any such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

I/We request the following insurance:

| Cost Premium: | Insurance Type: | Insurance Term (in mos.): | First Borrower's Signature | Date |
|---|---|---|---|---|
| $ NONE | Modified Automobile Single Interest | | /s/ Jaime Espinal | 12-18-06 |
| $ | | | Second Borrower's Signature | Date |
| $ | | | | |

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: | First Borrower's Signature | Date |
|---|---|---|---|---|
| $ NONE | | | /s/ Jaime Espinal | 12-18-06 |
| $ NONE | | | Second Borrower's Signature | Date |
| $ NONE | | | | |

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

Borrower's Initials: JE

IL 21141-4.1 10/2005     Original (Branch)     Copy (Customer)     Page 1 of 3

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at an Agreed Rate of Interest of    11.78  % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the   N/A    month anniversary of the Date of Loan shown above, the Agreed Rate of Interest applicable to the remaining unpaid principal balance shall decrease to N/A      % per annum.

Any amount shown above as Points has been paid by Borrower as points and any amount shown below as a Buydown Fee has been paid by a party other than the Borrower as a buydown fee. These amounts are considered a prepaid charge, are in addition to interest calculated at the above Rate(s) of Interest, and are reflected in the Rate of Interest for State Disclosure purposes shown above. Any Points or Buydown Fee are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Points and/or Buydown Fees will not be refundable to Borrower.

[ ] $ NONE           has been paid to Lender by a party/parties other than the Borrower as a Buydown Fee.

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full, unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

Loans secured by real estate are made under the Illinois Consumer Installment Loan Act.

**PREPAYMENT:** Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, bu may reduce the number of such payments.

**LATE CHARGE:** If any scheduled payment is not paid within  0   days of its due date, Borrower agrees to pay $       0.00   or   0.0  % of the amount of the installment payment, whichever is greater.

**SECURITY AGREEMENT:**

[ ] A. If this box is checked, this loan is unsecured.

[ ] B. If this box is checked, to secure the payment and performance hereof, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
|  |  |  |  |  |

2. Other Property:

[X] C. If this box is checked, Borrower's loan is secured by a Deed of Trust or Mortgage of even date on real property which requires Lender's written consent to a sale or transfer of the encumbered real property located at  120 W BROWN ST
WEST CHICAGO IL 60185                                                    . See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

**RETURNED CHECK FEE:** Lender may charge a $   0.00  fee, plus actual expenses incurred, if any check or draft given to Lender in connection with this loan is not honored because of insufficient or uncollected funds or because no such account exists.

**OWNERSHIP OF PROPERTY:** Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or a mobile home to Lender.

**USE OF PROPERTY:** Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

**TAXES AND FEES:** Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

**INSURANCE:** If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

**FINANCING STATEMENTS:** Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust on the real property.

Borrower's Initials: _JE_ _____

Subject to Borrower's right to any notice of default, right to cure default, and any other applicable law, if Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement. If this debt is referred for collection to an attorney not a salaried employee of Lender, Lender shall be entitled to collect all reasonable costs and expenses of collection, including, but not limited to, court costs and reasonable attorney's fees as permitted by law.

EFFECTS OF DEFAULT: If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At any such public sale, Lender may purchase the Property. The proceeds of the sale, minus the expenses of taking, removing, holding, repairing, and selling the Property, including reasonable attorney's fees, and minus the cost of paying off and removing any superior liens or claims on the Property, will be credited to the unpaid balance of Borrower's loan.

If the proceeds of sale are not sufficient to pay off the entire balance plus costs, Borrower agrees to pay the remaining amount upon demand. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property. Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

LAW THAT APPLIES: Illinois law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

OTHER RIGHTS: Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

OTHER TERMS: Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

Where the context requires, singular words may be read in the plural and plural words in the singular, and references to the masculine gender may be read to apply to the feminine gender.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

AUTHORIZATION TO USE CREDIT REPORT: By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked. ☐

---

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESSES:                                             SIGNED:
_[signature]_                                          _[signature]_ (Seal)
                                                       JAIME ESPINAL        -Borrower
_[signature]_                                          _____ (Seal)
                                                                            -Borrower
                                                       _____ (Seal)
                                                                            -Borrower
                                                       CITIFINANCIAL SERVICES, INC.
                                                       By: _[signature]_  BAU
                                                       (Name and Title)    12/18/2006 09:57:28

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal) _____        _____ (Seal) _____
Signature                    Date              Signature                    Date

This instrument was prepared by:
CITIFINANCIAL SERVICES, INC.
................................................
(Name)
164 DANADA SQUARE WEST
WHAEATON IL 60187
................................................
(Address)

After recording, return to:
CITIFINANCIAL SERVICES, INC.
164 DANADA SQUARE WEST
WHAEATON IL 60187



**FRED BUCHOLZ**
DUPAGE COUNTY RECORDER
DEC.21,2006      RHSP     8:43 AM
OTHER            04-09-438-023
**005 PAGES      R2006-244605**

# MORTGAGE

THIS MORTGAGE is made this 18th day of December, 2006 between the Mortgagor, JAMIE ESPINAL (herein "Borrower"), and the Mortgagee, CITIFINANCIAL SERVICES, INC. a corporation organized and existing under the laws of Delaware, whose address is 164 DANADA SQUARE WEST WHAEATON IL 60187 (herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 36,692.15, which indebtedness is evidenced by Borrower's note dated 12/18/2006 and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on 12/22/2026 ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of DUPAGE, State of Illinois:

THE FOLLOWING DESCRIBED REAL ESTATE IN DUPAGE COUNTY, ILLINOIS,
TO WIT: LOT 2 IN DIETERS RESUBDIVISION OF LOT ONE IN DIETERS PLAT
OF CONSOLIDATION, BEING PART OF THE SOUTHEAST 1/4 OF SECTION 9,
TOWNSHIP 39 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN,
ACCORDING TO THE PLAT OF SAID DIETERS RESUBDIVISION RECORDED
SEPTEMBER 28, 1993 AS DOCUMENT             IN DUPAGE COUNTY,
ILLINOIS.
BEING THE SAME PROPERTY CONVEYED BY FEE SIMPLE DEED FROM JAMIE ESPINAL
SINGLE AND EDMUNDO ESPINAL AND OLIVIA ESPINAL HUSBAND AND WIFE TO
JAMIE ESPINAL , BY QUIT CLAIM DEED, DATED 11/28/2001 RECORDED ON
12/06/2001 IN DOCUMENT              IN DUPAGE COUNTY RECORDS, STATE
OF IL.

which has the address of 120 W BROWN ST, WEST CHICAGO, Illinois 60185 (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Original(Recorded)     Copy(Branch)     Copy(Customer)                Page 1 of 5

JAIME ESPINAL                                                                                                                                    12/18/2006

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

JAIME ESPINAL                                                                                                    12/18/2006

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

    6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

    7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

    Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

    8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

    9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

    10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

    11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

    12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

    13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

    14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

JAIME ESPINAL                                                                                                                                         12/18/2006

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

(Intentionally Left Blank)

Original(Recorded)     Copy(Branch)     Copy(Customer)                                                                       Page 4 of 5

22. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

_Jaime Espinal_ -Borrower

_____ -Borrower

STATE OF ILLINOIS, __KANE__ County ss:

I, __MARK ADAMIAN__, a Notary Public in and for said county and state, do hereby certify that __JAIME ESPINAL__ personally known to me to be the same person(s) whose name(s) __IS__ subscribed to the forgoing instrument, appeared before me this day in person, and acknowledged that __he__ signed and delivered the said instrument as __HIS__ free voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this __18th__ day of __DECEMBER__ __2006__

My Commission expires: __9-29-09__

Notary Public

Original(Recorded)    Copy(Branch)    Copy(Customer)    Page 5 of 5
(Space Below This Line Reserved For Lender and Recorder)

```
"OFFICIAL SEAL"
MARK ADAMIAN
Notary Public, State of Illinois
My Commission Expires 09/29/09
```